312-0599, City of Kankakee, Abilene by L. Patrick Howler v. State of Illinois Department of Revenue The City of Kankakee has no right to review the department's long-term adjustment letter seeking to offset any erroneous tax payments made to the City of Kankakee. The authority to correct errors in tax distributions was granted to the department by the legislature under the Civil Administrative Code. And the provision granting the authority to make corrections and distributions does not create a cognizable cause of action on behalf of the city, which is a subordinate political entity of the state. There are a couple of overarching reasons for this, and then I will discuss the arguments and the allegations made in the complaint and in the preliminary injunction received. First of all, to permit the city to review the long-term adjustment distribution letter is effectively a collateral attack on what's been a finalized audit by the Department of Revenue. In audits, there's confidentiality concerns by the taxpayer. The taxpayer is not a party to this lawsuit, has had no notice of the proceedings, and cannot defend the tax position that it agreed to with the department. An action in this case would also likewise jeopardize the rights of the village of Glendale Heights, who has received the correct distribution of tax funds. And again, it's not a party to this lawsuit. It has no opportunity to dispute or contest Kankakee's claims. And finally, the long-term distribution adjustment, the adjustment of tax revenues under the Civil Administrative Code is a routine executive action of the Department of Revenue. It's an official course of conduct. It's done on a regular basis, and it's done throughout the state of Illinois. And, I mean, if you think about it, there are multiple retailers, large and small in the state of Illinois. Think of a Walmart or a Walgreens or a Target or a Macy's, who may have businesses and multiple sales in multiple cities. Anytime an adjustment is made, it may affect multiple jurisdictions, multiple counties, multiple cities. If you're going to permit cities and municipalities to challenge these distributions every time they don't like the result, essentially it's going to impair the tax collection obligation of the Department of Revenue. It can effectively – and it's going to prejudice, not just – I mean, you have a situation where one city can essentially grind to halt tax revenue distributions to multiple jurisdictions. I don't think the idea is that they just don't like the distribution. Isn't what they're saying is that they think it's incorrect? Correct, Your Honor. They think it's incorrect, but that may happen multiple times. Because the Department is constantly adjusting and readjusting tax revenues. They're taking some – What if they're right? What if they are incorrect? What is the recourse? There is no recourse under this statute, Your Honor. That's the position of the Department. This is something – a matter that's been authorized by the Department of Revenue to make, and municipalities have no recourse. Remember, the municipalities are subordinate political entities of the state. There's no inherent right for them to challenge a state action on any level. And so they just – they have no recourse under this particular statute. Now, in this particular – What's this nature of adjustment that seems to be going all over? Isn't it – it's the amount they share out of the sales tax that's collected? What happens under the sales tax is under the percent – there's the general statewide 6.25% sales tax revenue. And 1% at the point of that gets distributed to this local government fund. And then the Department allocates or distributes it based on sales in any particular jurisdiction. Right, in the municipality. Into the municipality. They have a claim on that 1% or are entitled to that 1%. So, well, this is the Department's duties to distribute. I'm not sure I would call it an entitlement or a claim. That's our position in this case. But what happens is, in a case like this, the Department will routinely audit the taxpayers, a normal, everyday matter. And in this particular case, for example, it turned out the taxpayer was entitled to a refund. Tax funds that had been distributed to Kankakee were actually should be refunded to the taxpayer. Tax funds that that – Well, to make it simple for me, a taxpayer messed up on filing the return and paid too much tax. Is that what you're saying? That was one aspect of it. And the money was paid to Kankakee that should have been going to Glendale Heights. And money was paid to Kankakee that was really out-of-state sales. That Kankakee wasn't supposed to get under the law. So taxes and revenues were wrongfully provided to the City of Kankakee. And the Department is simply offsetting future tax payments to recover those tax payments that were wrongfully made to the City of Kankakee. Now, in this case, the procedural posture is important because what the City has done is they've brought claims that I think the court – that were certainly clearly erroneous when they used that term. Their first claim they brought was under administrative review, and clearly administrative review doesn't apply to this case. The short answer is in order for the administrative review law to apply, the governing statute has to adopt it. The Civil Administrative Code didn't adopt administrative review. There's no administrative review. The arguments presented by the circuit court and the taxpayer in this case were a bit, I guess, convoluted in the sense that the court said, well, since this was a sales tax case, under the sales tax law, the Department has adopted the Administrative Procedures Act, which is different from the Civil Administrative Code. Therefore, the administrative review law applies. The Administrative Procedure Act, the Administrative Review Law, and the Civil Administrative Code are three different statutes governing three different aspects of the law. The Administrative Procedure Act has nothing to do with adopting the administrative review law. Without the adoption of the administrative review law, there is no administrative review. It's that simple. The only other claim for a remedy here is that they allege that it was articulated in the briefs that the taxpayer of the city of Kankakee argued for a writ of prohibition. A writ of prohibition is a remedy to halt a tribunal that's actively beyond its jurisdiction. You say taxpayer. Who's the taxpayer? I'm sorry. I misspoke. You've been saying that all along. The tax recipient, the city of Kankakee. There's only a taxpayer, presumably as a business entity or a consumer within the jurisdiction, paying a sales tax, state sales tax, and there's a reimbursement rate active in the municipality, right? That's correct. I should be saying that when I've said the taxpayer, what I really mean is the city of Kankakee. Right. The city of Kankakee has argued for that a writ of prohibition should apply against the Department. The writ of prohibition just doesn't fit in this case. The writ of prohibition is a remedy for halting the actions of a tribunal that's acting outside its jurisdiction. There's no tribunal. The Department was certainly acting within its authority under the Civil Administrative Code, and the writ of prohibition, the remedy, simply would not apply in this case. Now, to the extent if there were a remedy for the city in this context, any such remedy is barred by sovereign immunity and would have to be brought to the Court of Claims. The city is seeking a judgment against the state. Under basic principles of sovereign immunity, only the General Assembly appropriates funds. Executive agencies can't appropriate funds. Courts don't appropriate funds. Only the legislature can appropriate funds. And by enjoining the Department of Revenue's long-term distribution letter and preventing the Department from recouping the tax revenues, effectively what the city is doing is forcefully forcing the Department to pay out funds twice. It's already paid these funds to the city of Kankakee. If it can't recoup those funds from the city of Kankakee, it's already also paid these funds back to the village when they apply. It's provided the taxpayer with its tax refund. You have a situation where these funds are effectively coming out of the agency's budget or general revenue. And that's simply barred by the principles and statutes of sovereign immunity. Was there any limitation on the corrective action that the Department wants to take? No. And I think the city of Champaign case made that clear. There is no specific statute of limitations. As a practical matter, in a case like this, the limitation will be governed by the audit proceedings of the taxpayers. And by this time, I really mean the taxpayers. The taxpayers' audit proceedings. Right. Well, all monies come from others in the government. Actually, they come from a taxpayer. Exactly. So there's not an actual limitations provision in the redistribution provision of the Civil Administrative Code. But as a practical matter, the Department will only reach back into the audit period that they're dealing with here. So if there is any – and in this case, the city has never characterized the characterization of the case made by the Department of Revenue that essentially what they're seeking is a judgment against the state. Their only response to our sovereign immunity argument was that state officials were acting beyond their authority. And therefore, sovereign immunity does not apply. But again, what they're really complaining about is an error in the underlying audit that led to this issue as a long-term distribution adjustment matter. And any error by a state official is still barred by sovereign immunity. This is not a case where the state official is acting outside their authority in making this long-term adjustment. Why does the statute reference the previous six months from the time this allocation was discovered? I guess I'm confused about why it says statutory language, I think, in two different sections, if there is no prohibition against going beyond six months. Certainly, Your Honor, that does go to the merits of their case. The six-month limitation period that they have referred to and that they've cited to is a different statutory provision governing a different statutory program than governed by the Civil Administrative Code. This is found in the State Finance Act. It's found in the Illinois Administrative Code. And it involves a program that was set up to – I mean, retailers will move from village to village. It's not uncommon throughout the state. And for record-keeping purposes, it's important that the right municipality get the right sales tax from the right retailer. And so this was set up to ensure more accurate record-keeping and to require that – it requires the department to compile a list of addresses of retailers and the cities to notify the department of changes of addresses. And under that provision, when a retailer changes their address, there's a six-month lookback period. Now, the situation we have here is not a question of a retailer's address. The issues arose were where were the sales cited and whether certain sales should even be considered sales in the state of Illinois or otherwise. This wasn't a situation that involved a retailer moving from one village to another village and just keeping an accurate record of the location of the actual retailer. So the State Finance Act and Municipal Code provisions covering the six-month limitation period just do not apply to this case. Mr. Baroff, how often would there be the ability to make a refund within six months of the payment when an audit is required? I mean, as a practical matter, would you be able, if an audit was required to determine the mistake, to make the payment within six months of the original payment? As a practical matter, probably not. Audits often go back years and often take years, sometimes years, to complete. So I don't think the legislative group contemplated that when they were creating this six-month look period. If they knew anything about how the audit procedure works, and I think when you look back at the legislative history, I think the comments of, I can't remember, one of the Senators was very clear that this was designed to fix a problem in the Chicago suburban areas where a number of municipalities were adjacent to each other, and a taxpayer could move across the street and then the tax revenues would go to a different municipality. So it was more of a record-keeping problem, whereas the Civil Administrative Code provision correcting the distribution of monies never encompassed any such six-month period. We have to, as a practical matter, look back for a longer period than a six-month payment period. In my remaining time, I just want to make a point about the modification of the injunction. And this kind of relates back to my earlier arguments. If the city of Kankakee had standing to challenge anything, it would only be the site of sales. They have no direct interest in whether the taxpayer here has the right to a refund. They would have no direct interest in whether sales are properly out-of-state sales or in-state sales. So the only possible claim they might have even standing to consider would be where the sales were properly cited in Kankakee or not cited in Kankakee. That was a small percentage. That was slightly less than half of the long-term adjustment letter. I think it was $211,000. So even if this Court rules that the injunction should be upheld, I think it should certainly be modified only to cover that portion of the sales that are directly related to the sites in Kankakee. So what would you say would be the proper jurisdiction for that challenge? Well, again, the proper jurisdiction, I think, would probably – well, that's assuming a couple of rulings by this Court. If the Court found there was a cause of action in the circuit court, which we don't believe there is, any action would have to be brought at the Court of Claims, in which case there would be no injunction. But if this Court were to rule that there is some form of a cause of action, that cause of action should only be limited to a review of the $211,000 that relates to whether sales were properly cited in the city of Kankakee. Thank you. Thank you, Counsel. Mr. Power, you may proceed. Thank you, Your Honor. Your Honor, so what brings us here today is an appeal, an interlocutory appeal, from an injunction issued by the circuit court of Kankakee County. You had that before. And the basis of this suit filed by the city of Kankakee was the issuance of what was described by the Department of Revenue when it was issued under their agency, as they say under their logo, called a long-term distribution adjustment. And basically what happened on November 16th of 2011, the mayor received this notice saying, the department has determined you owe us $540,810.99, which should have been attributed to another municipality. No explanation. It did indicate it should have been attributed to another municipality, but why, we did not know. It then went on to say, here's what we're going to do, we're going to do you a favor, we're going to let you pay it back monthly over six months. And all municipalities in this state are strapped, and Kankakee is no exception. And this was hurtful to the budget. The mayor had to do something, and what we wound up doing was first calling the Department of Revenue. Wouldn't even talk to us. That hurt. Too much confidentiality involved here, they can't talk about the taxpayers and so forth, so they wouldn't tell us anything. We said, there's a misallocation, what's the basis of the misallocation? We can't talk about it. Well, tell me this, what does it relate to? What time period? And they did tell us something then, and that's reflected in an affidavit that appears in the case. It relates to 2002 to 2005. Those were the years. 2002-2005 wouldn't tell us anything else. Based upon that, we were forced to file an action. We filed this complaint in the Circuit Court of Kankakee County. Six counts, three of them under administrative review. One based upon the fact that this is a final decision of IDOR, and it doesn't tell us anything that we can get our teeth into. It doesn't tell us why there was a quote misallocation. It doesn't tell us anything about how they came up with this number. Nothing. That violates basic administrative law. Now, the first thing that was raised here on review is the jurisdiction of this court. They said, well, the Administrative Review Act doesn't apply in this case. And the reason they're arguing that the Administrative Review Act doesn't apply is because they claim that this action was taken under the Finance Act. And the Finance Act doesn't adopt the administrative code. Well, it doesn't. But the Department of Revenue operates under a different article, a totally different article, Article 30. And that clearly adopts the administrative code. And I refer to that, and I'll refer you to my argument on page 8. The section in question is 35, ILCS 120-11A. That's the revenue article. Now, they are somehow drawing some distinction that this doesn't encompass the action they're taking under the finance article. Now, first of all, the finance article doesn't call for any adoption. The finance article is a restriction on auditors in the state. And I would ask the court to please look at the purpose of Article 30 set forth in Section 1-2. This is intended to provide a comprehensive and thorough post-audit of obligation expenditures, receipts, and use of public funds of the state under the direction and control of the Auditor General. To the end that the government of the state of Illinois will be accountable to the General Assembly and the citizens and taxpayers of the state. That's the purpose of this. They set up procedures to audit. They apply to the Department of Revenue. When the Department of Revenue is acting under the Revenue Code to determine how much taxes are to be paid and to whom and what municipality gets what, they may proceed under the Finance Act, but their authority is under the Department of Revenue. That specific basis is cited by the judge in her decision. She says you're bound by the Administrative Review Act because it's adopted in your code, and the fact that it isn't under the Finance Act isn't relevant. It doesn't make any difference. That's procedural. Now, the section in count two of our complaint that we're talking about relates to the six-month statute of limitation. That's under the Finance Act. That's part of the procedure they have to follow. When they're going back and reallocating funds, they can only go back six months. It doesn't limit it in any way, and that binds the Department of Revenue. They think not, but it clearly does. The judge in this case thought so also and found it to be so. She found the Administrative Review Act to apply in this case. If it didn't, there's still jurisdiction. She cites it, and I ask you to please look at her opinion. It's well-recent that there is general jurisdiction to review the actions of administrative agencies under the general jurisdiction of a court. I've cited several cases in my brief, and I ask you to please look at them. They were also cited by the judge. Prohibition is one of them. A prohibition is a direction from a superior tribunal to an inferior tribunal. Counsel argued that, well, yeah, but that doesn't apply here. The case that I rely upon was against the Department of Revenue. So it does apply, and that pleading is in the alternative. It's our position that administrative review applies, and if not, prohibition applies. With regard to the issue of sovereign immunity, I cite several cases, Your Honors. The actual formal defendant is not really controlling. The courts, in their cases, look to the relief requested primarily. We're asking for injunctive relief. We don't know what to do with this document. We want to say that if it's a question of the taxes were allocated to us and now are being reallocated, you go back 10 years, you're going to go back 10 years, and they say under the Champaign case there's no statute of limitations. So 50 years? That doesn't make a lick of sense, and it doesn't comport with the law, at least as I understand it, and as we set forth in our briefs. So to say that we're barred by sovereign immunity, I think, doesn't fly. Please, I'm asking you to look at my cases. I don't want to get into a lot of detail in that. They're in the brief. But we are questioning the authority of the person who did this, that is to say, who signed this long-term distribution adjustment, and we're saying that he acted or she acted improperly. That is not an attack against the state. We're questioning the fact that this, as an administrative declaration, is deficient, and I cite in count one of our complaint that any administrative agency, when they issue an order, have to give you a reason. They can't just put anything down. They have to support it. They have to support it in law, and they have to support it with fact. If there's no law in fact supporting the directive, it's subject to attack under the Administrative Review Act. That's what we're doing on this. This could wind up, ultimately, as being a declaratory judgment or something of that ilk. We can't file a declaratory judgment when we don't even know the basis and the underlying rationale of the decision we're dealing with, Your Honors. That's why we're here in court. Now, we've got to focus, it seems to me, or at least I want the court to focus, on the fact that we're here in an interlocutory appeal. I cited what's called the Bus Barton case, which is a Supreme Court case that talks a lot about, we're talking about the substantive issues underlying the case. We're talking about that. In this Bus Barton case, the court sort of cautions tribunals in issuing preliminary injunctions, don't get the standard confused with a permanent injunction. They talk about what should be looked at. However, in a hearing for a preliminary injunction, plaintiffs need not carry the burden of proof that is required to support the ultimate issue. I think the important thing is that there is a fair argument and a fair basis for the circuit court's decision. I think if you go through it, there's a fair basis, number one, for the jurisdictional finding. There's a fair basis for the issuance of the preliminary injunction based upon the four elements that, I'm not going to go into each one of them, but the court makes findings as to each one of them. The court makes findings as to facts in this case. It's clear in the memorandum supporting the decision that it was based upon facts. Three affidavits she reviewed. One affidavit was an affidavit of an employee of the Department of Revenue, which she said conflicted with the very long-term distribution adjustment that was being contested. Clearly, it did. Counsel's argument that it didn't, but it did. If you look at it, you'll see it does. She says there should be a distinction drawn between some of the funds paid that were as a result of audit and some of the funds paid as a result of the location of the taxpayer. That's what the affidavit said. That's not what the long-term adjustment says. The long-term adjustment says it has to do with location only of the taxpayer. That's what it says. Counsel has two minutes. Actually, because of this discrepancy, the judge basically said that she questioned the credibility of the affiant in this case because there's a conflict here or the department or someone. Something wasn't in order. She did not give a lot of weight to that affidavit. I'm leading back to the standard of review here. Counsel argued, at least in his brief, that the standard of review should be de novo. Clearly, that's not true. There were factual findings made, and even the case cited by him with the factual finding made, it has to do not with the de novo at all but the abuse of discretion. That's what we're here on. Very briefly, with regard to the abuse of discretion standard, a trial court abuses its discretion only when its ruling is arbitrary, when it's very offensive or unreasonable, or when no reasonable person would adopt the court's view. Clearly, a review of the record in this case will show that that's not the case. There has been no abuse of discretion, and the court should deny this appeal, and the preliminary injunction should stand pending in this circuit court case. That's all I have. Thank you, Mr. Nauert. Mr. Bairoff. Your Honors, I understand counsel's argument that the city of Kankopee has budgetary problems. I think all municipalities have budgetary problems in these last few years with the economic downturn. I'm not here on behalf of the village of Kankopee. Even the state. And the state obviously has budgetary problems. I can't speak for the city of Glendale Heights. I'm not their attorney. I'm not there on their behalf. But I would venture to guess if the village of Glendale Heights were here, they would say, we have budgetary problems, too. We could have used this money to plug a hole in our budget. I think the taxpayer, again, for the same reason, who are here would say, I overpaid my taxes. I have rights to get these monies back. Counsel's point that the department is acting under the same claim that it's acting under the state finance act. Actually, our claim is we're acting under the civil administrative code. It's section 2505-475. And his point about that this dispute arose out of an audit is an interesting one. Because I think it just illustrates part of the problem with the justiciability of this case. The taxpayer is not part of this case. In order to resolve this case, they want to re-litigate the audit, which is a matter between the department and the taxpayer. And there's no basis. They have no standing to re-litigate that audit. They can't. I mean, the taxpayer didn't like the audit, could have brought a claim for a refund and filed a protest monies act or some other action, like in the Harvey oil case is a good example of that. But the city of Kennedy, he has no standing to contest the audit. And so that just kind of illustrates again why they can't be proceeding under administrator review or any other. So who has standing to contest an audit? The taxpayer. Only the taxpayer. Well, the taxpayer or in. How about a third party beneficiary? If they were. I think in the Harvey oil case, some of the taxing authorities intervened on behalf of the department, not to contest the audit but to support the department's view of the audit. Who watches over the department? Pardon me? Who watches over the department? Well, the state legislature watches over the department. The auditor general watches over the department. We at least have one that probably could do it. And as to the. . . I mean, there are certain instances where parties would have to go to the court of claims. I think that. . . I can't remember the case. Oh, I think it was the Halloran and Halloran case where a party made it. I think that's the name of it where the. . . If I can get that case correctly. Correct. Well, in any event. . . It was the Halloran and Halloran case where the court said that if a party wanted to obtain a judgment against the Department of Revenue, they had to go to the court of claims. Because again, it was the same situation. Monies had been spent. Monies had been dispersed. And if you want to recover those monies, you can't go back. . . You can't get them from the department absent a claim in the court of claims because these are monies. . . You're essentially getting. . . You're essentially seeking funds that have not been appropriated by the legislature. It's like the Villager Pawnee case. The appropriation lapsed on the interest that would have been owed on some tax refunds. And the Supreme Court said you can get interest on this. . . You can get the interest, but you can't go back beyond a certain point because the appropriation has lapsed here. And that's kind of the same situation you have here in that money's been given out to the different parties. The money's been given to Glendale Heights. The money's been provided to the taxpayer. If you want to get that money from the state of Illinois, you'd have to go to the court of claims to do that if there was some form of a cause of action. Counsel, one minute. Well, you mentioned that third-party beneficiaries do have some standing in that. At times, in fact, they have come in on behalf of the department. But like here, there are times when a third-party beneficiary may not be in a position to be supportive of the department. What is the recourse that they can say that, you know, this audit we believe is inaccurate, that we believe that they are not entitled and we are beneficiaries because we are in receipt of tax money that they're now saying has been misallocated? Absolutely. A statute that allows them to intervene, and I think that's the case in property tax cases where taxing districts might intervene, I don't think they would have any recourse because they're not really third-party beneficiaries. They may have an interest. I mean, they may have a sort of indirect interest. But they're not really third... I mean, if the audit is incorrect and you're saying subject to this audit, we incorrectly gave you money, but if the audit is incorrect and they really did accurately receive the money, how can you say that they're not third-party beneficiaries or they don't have any standing or they didn't have the right to the money in the first place? Because any standing they have as subordinate political entities of the state has to be by statute. There's no inherent right to these tax dollars by the cities. This is provided by the state by statute, and the mechanism is provided by statute, and any form of review or relief has to, again, be by statute. And... Is this... Help me out here. Maybe linguistically it's a problem, but isn't this really an appropriation, or is it not? Appropriation to the city. It's an appropriation. They get that percentage of sales tax revenue that's been collected within their jurisdiction. And the department decides how much of that they get. Right, well, it's a decision by statute as to how much they get, and the department is merely the mechanism that determines the amount, right? They just calculate it. And there's no... What if the city says, I don't think you're giving us the proper amount? What's their recourse there? If the city felt that... I don't know if they would have a recourse. I don't know. Can the city seek an audit, or does it only have to originate with the department? I think only the department has to. They have audit power. There's nothing in the statute that I know of that gives the city any sort of... But can they request an audit? I mean, I suppose they could informally go to the department, call the department up and say, we don't feel like this is right. Can you guys go audit that taxpayer? But certainly, there's no authority for them to ask for an audit, as far as I know, as far as I can tell. They certainly haven't cited it to any of their briefs. Just very quickly, the city of Champaign County establishes the limitation provisions, I think, very clearly. Our argument was that any conflict of the affidavit was irrelevant because this case was about the authority of the department, not about the underlying facts. Thank you. Thank you, Mr. Baroff. Thank you, Mr. Power, both for your fine arguments in this matter this morning. It will be taken under advisement, and a written disposition shall issue. The court will stand at brief recess for a panel change. The court is now at recess.